☐ **ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Rome

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

SEP 2 8 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| RITA WATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SOUTHERN GROUP, LLC, SOUTHERN | ) |
| REAL ESTATE OF TENNESSEE, LLC, | ) |
| TRAVIS SHIELDS, IN HIS | ) |
| INDIVIDUAL CAPACITY AND D/B/A | ) |
| SOUTHERN REAL ESTATE AND | ) |
| SOUTHERN REAL ESTATE, LLC, | ) |
| JOSHUA DOBSON, IN HIS | ) |
| INDIVIDUAL CAPACITY AND D/B/A | ) |
| SOUTHERN REAL ESTATE AND | ) |
| SOUTHERN REAL ESTATE, LLC, | ) |
| THOMAS DOBSON, IN HIS | ) |
| INDIVIDUAL CAPACITY AND D/B/A | ) |
| SOUTHERN REAL ESTATE AND | ) |
| SOUTHERN REAL ESTATE, LLC, | ) |
| JOEL MCCORMICK, PAUL EDWARD | ) |
| GOTT, III, THE HAISTEN GROUP, | ) |
| INC., and FARM CREDIT SERVICES | ) |
| OF MID-AMERICA, FLCA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action File No.

No. _____

**4:10 CV- 155 -HLM**

## COMPLAINT

COMES NOW Plaintiff Rita Watkins, by and through counsel, and files this Complaint against the Defendants named herein. In support of said Complaint, Plaintiff shows this Court the following:

1

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff is an individual and resident of the State of Alabama.

2.

This action involves matters arising under the laws of the United States, so this Court has subject matter jurisdiction. 28 U.S.C.A. § 1331.

3.

Further, this action is between citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C.A. § 1332(a).

4.

This Court has supplemental jurisdiction over the state law claims asserted herein, pursuant to 28 U.S.C.A. § 1367(a).

5.

Venue is proper in this Court by virtue of LR 3.1(B)(2), NDGa., 28 U.S.C.A. § 1391, and 18 U.S.C.A. § 1965(a).

6.

Defendant Southern Group, LLC (hereinafter, "Defendant Southern Group") is a Tennessee limited liability company, with headquarters in Kimball, Tennessee, and is registered with the Georgia Secretary of State to transact business in Georgia.

7.

Defendant Southern Group may be served through its registered agent, Registered Agents Legal Services, LLC, at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

8.

Defendant Southern Group is subject to the personal jurisdiction of this Court by virtue of its presence in the State of Georgia.

9.

Defendant Southern Real Estate of Tennessee, LLC (hereinafter, "Defendant Southern Tennessee") is a Tennessee limited liability company, with headquarters in Kimball, Tennessee, and is registered with the Georgia Secretary of State to transact business in Georgia.

10.

Defendant Southern Tennessee may be served through its registered agent, Registered Agents Legal Services, LLC, at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

11.

Defendant Southern Tennessee is subject to the personal jurisdiction of this Court by virtue of its presence in the State of Georgia.

12.

Defendant Travis Shields (hereinafter, "Defendant Shields") is an individual and resident of the State of Tennessee and may be served in Kimball, Tennessee.

13.

Defendant Shields is subject to the personal jurisdiction of this Court by virtue of O.C.G.A. § 9-10-91, the Georgia Long Arm Statute.

14.

Defendant Joshua Dobson (hereinafter, "Defendant J. Dobson") is an individual and resident of the State of Tennessee and may be served in Kimball, Tennessee.

15.

Defendant J. Dobson is subject to the personal jurisdiction of this Court by virtue of O.C.G.A. § 9-10-91, the Georgia Long Arm Statute.

16.

Defendant Thomas Dobson (hereinafter, "Defendant T. Dobson") is an individual and resident of the State of Tennessee and may be served in Kimball, Tennessee.

17.

Defendant T. Dobson is subject to the personal jurisdiction of this Court by virtue of O.C.G.A. § 9-10-91, the Georgia Long Arm Statute.

18.

Defendants Shields, J. Dobson and T. Dobson are the owners of and do business as Southern Real Estate, LLC, a/k/a Southern Real Estate, which purports to be a limited liability company with headquarters in Kimball, Tennessee, but which does not appear to be registered with either the Tennessee or the Georgia Secretaries of State.

19.

Southern Real Estate, LLC may be an alias for Southern Real Estate of Tennessee, LLC.

20.

Defendant Joel McCormick (hereinafter, "Defendant McCormick") is an individual and resident of the State of Georgia and may be served in Rising Fawn, Georgia.

21.

Defendant McCormick is subject to the personal jurisdiction of this Court by virtue of his presence in the State of Georgia.

22.

Defendant Paul Edward Gott, III (hereinafter, "Defendant Gott"; together with Defendants Southern Group, Southern Tennessee, Shields, J. Dobson, T. Dobson and McCormick, collectively, the "Southern Group Defendants") is an individual and resident of the State of Tennessee and may be served in Kimball, Tennessee.

23.

Defendant Gott is subject to the personal jurisdiction of this Court by virtue of O.C.G.A. § 9-10-91, the Georgia Long Arm Statute.

24.

Defendant The Haisten Group, Inc. (hereinafter, "Defendant Haisten") is a Tennessee corporation, and may be served at its principal office of 6005 Century Oaks Drive, Chattanooga, Tennessee 37416.

25.

Defendant Haisten is subject to the personal jurisdiction of this Court by virtue of O.C.G.A. § 9-10-91, the Georgia Long Arm Statute.

26.

Defendant Farm Credit Services of Mid-America, FLCA, a federal land credit association (hereinafter, "Defendant FCS"), may be served at its principal address of 1601 UPS Drive, Louisville, Kentucky 40223.

27.

Defendant FCS is subject to the personal jurisdiction of this Court by virtue of O.C.G.A. § 9-10-91, the Georgia Long Arm Statute.

28.

Defendants are joint tortfeasors.

6

**STATEMENT OF FACTS**

## A. Defendants' Recruitment of Plaintiff

29.

Plaintiff was approached by Nicolas Tcharos in late 2007 about purchasing property at The Preserve at Rising Fawn located in Rising Fawn, Dade County, Georgia (hereinafter, the "Development").

30.

Nicolas Tcharos acted as a recruiter for the Southern Group Defendants, recruiting investors for the Development.

31.

At all times described herein, Nicolas Tcharos was an agent of the Southern Group Defendants.

32.

At all times described herein, Nicolas Tcharos was acting at the direction of the Southern Group Defendants, which actions were ratified by the Southern Group Defendants.

33.

Upon information and belief, Nicolas Tcharos is not a licensed realtor or broker in the State of Georgia.

34.

The Southern Group Defendants knew that Plaintiff would and did rely on Nicolas Tcharos' representations about the

7

Development in deciding whether to purchase a lot within the Development.

35.

Nicolas Tcharos and Defendant J. Dobson persuaded Plaintiff to purchase property within the Development.

36.

Nicolas Tcharos met Plaintiff at the Development in February of 2008, at which time Plaintiff also met Defendants J. Dobson and McCormick and John Tsitsikaos.

37.

Plaintiff had previously mentioned to Tcharos that she was contemplating establishing a destination spa in Alabama. At the February, 2008 meeting at the Development, Tcharos suggested that Plaintiff tell J. Dobson about her idea for a spa.

38.

Thereafter, Defendant J. Dobson insisted that the spa should be located at the Development and asked Plaintiff if she would be interested in a partnership with him on it. She stated that she would consider it.

39.

Later in February of 2008, Defendant J. Dobson visited Plaintiff at her home in Alabama to further discuss plans for the spa. At that meeting, Defendant J. Dobson stated that he would pay for the build-out of the spa and would pull out $50.00

per owner per month from the Development's property owner's association to help with operating expenses.

40.

Plaintiff was to be the spa director, which would require her to move on-site. At the February, 2008 meeting in Alabama, Defendant J. Dobson told Plaintiff she needed to buy a lot in the Development right away, as he wished for the spa to be operational within eighteen months.

41.

As early as the beginning of March, 2008, the Southern Group Defendants were representing to Plaintiff that the value of all lots in the Development was $175,000.00 for each lot.

42.

The Southern Group Defendants made such representation by, *inter alia*, sending an email to Plaintiff to which a representative appraisal was attached, valuing another lot in the Development at $175,000.00, which email and appraisal are attached hereto as Exhibit A.

43.

Said email was sent to Plaintiff on March 2, 2008, by John Tsitikaos, an agent of the Southern Group Defendants who was acting at the direction of the Southern Group Defendants and whose actions were ratified by the Southern Group Defendants.

9

44.

Plaintiff and Defendant J. Dobson thereafter continued discussions and negotiations regarding the building and running of the spa.

45.

In or around March of 2008, Defendants J. Dobson, McCormick and Gott represented and promised to Plaintiff in writing that certain amenities would be completed in the Development prior to the end of May, 2009, and upon information and belief, used the United States mail or an interstate carrier to transmit said writing to Plaintiff.

46.

Said amenities included a fitness center, pool, tennis courts, playground, clubhouse, walking and hiking trails, equestrian facilities, lakes, paved roads and unlimited access to golf at Southern Trace a/k/a Big Sandy.

47.

Upon information and belief, of the amenities referenced in paragraph 46 hereinabove, only the equestrian center has been completed to date.

48.

Defendants J. Dobson, McCormick and Gott also represented and promised in writing in or around March of 2008 that water, electrical and a paved road would be extended to Lot 8, Phase 3

of the Preserve, Rising Fawn, Georgia 30738 ("Lot 8"), and upon information and belief, used the United States mail or an interstate carrier to transmit said writing to Plaintiff.

49.

Upon information and belief, water, electrical and a paved road have not been extended to Lot 8 to date.

50.

Thus, with the exception of the equestrian facility, Defendants J. Dobson, McCormick and Gott did not fulfill the promises set forth in paragraphs 45, 46 and 48 hereinabove.

51.

Additionally, in conversations that took place in February of 2008 and in the spring of 2008, Defendant J. Dobson promised that the following amenities would be completed in the Development:  gates at the entrance to the Development and gated access to each sector of the Development, hot tubs, saunas and steam rooms, a game center, an outdoor entertainment area with fire pits, state-of-the-art communication services, exclusive rental properties separated from private homes, a 24-hour concierge service, an on-property charge card to be issued to renters and a restaurant.  With respect to the spa, Defendant J. Dobson promised the following:  that a 1,000 plus square foot facility would be built in the common area of the Development and would be equipped to specifications agreed upon by himself

and Plaintiff, that rental facilities within the Development would be equipped with internet access and that all activities at the spa would be able to be booked online, that an integrated marketing plan would be prepared for rental facilities, the equestrian facility and the spa, and that $15,000.00 per month in operating capital would be provided to the spa from the Development's property owner's association.

52.

Upon information and belief, of the amenities referenced in paragraph 51 hereinabove, only the equestrian center and the gates at the entrance to the Development have been completed to date and gated access to each sector of the Development has been partially completed to date.

53.

Thus, with the exception of the equestrian facility, Defendant J. Dobson did not fulfill the promises set forth in paragraph 51 hereinabove.

54.

Defendant J. Dobson, in May of 2008, stated that if Plaintiff were really serious about the spa, she should buy a lot in the Development to show her commitment.

55.

Defendant J. Dobson urged Plaintiff to choose her lot in the Development so that plans for the spa could proceed.

56.

Defendant J. Dobson was conditioning the building of the spa on Plaintiff's purchase of a lot within the Development.

57.

Defendant J. Dobson told Plaintiff that she could purchase a lot worth $175,000.00 for $135,000.00.

**B.    The Sale of Lot 8 to Plaintiff**

58.

Defendant Southern Group and Defendants J. Dobson, McCormick and Gott had "preferred" lenders and arranged for Plaintiff to finance her lot purchase with Defendant FCS.

59.

Defendant J. Dobson told Plaintiff that he would "take care of the loan" and he did arrange for the loan to Plaintiff from Defendant FCS.

60.

Upon information and belief, the Southern Group Defendants used the mails and wires in obtaining loan documents from Defendant FCS to be signed by Plaintiff and in thereafter forwarding executed loan documents to Defendant FCS.

61.

Defendant FCS never contacted Plaintiff regarding a loan, and never asked Plaintiff to fill out a loan application or to

provide income information, prior to or contemporaneously with the closing of the loan from Defendant FCS to Plaintiff.

62.

Prior to purchase, Defendant FCS required an appraisal from Defendant Haisten, with whom Defendant FCS had a long-standing relationship.

63.

Upon information and belief, Defendant FCS used the wires to engage the services of Defendant Haisten to appraise the lot in which Plaintiff was interested.

64.

On or about May 14, 2008, John Timothy Haralson (hereinafter, "Haralson"), an appraiser employed by Defendant Haisten, rendered a written appraisal (hereinafter, the "Appraisal Report") for Lot 8 in the scope of his employment by Defendant Haisten, which Appraisal Report is attached hereto as Exhibit B.

65.

Defendant Haisten and Haralson each knew that the purchase price for Lot 8 was $135,000.00.

66.

Haralson, in the scope of his employment by Defendant Haisten, appraised Lot 8 for $135,000.00.

14

67.

Haralson stated in the Appraisal Report that the indicated value was $175,000.00, but stated that the appraised value was $135,000.00.

68.

All comparables used in the Appraisal Report were for lots located within the Development.

69.

Upon information and belief, most or all lots in the Development that were sold, no matter the size, were sold for $175,000.00.

70.

The sales prices of most lots in the Development, including those used as comparables in the Appraisal Report, were artificially set.

71.

The sale price of Lot 8 was artificially and arbitrarily set at $135,000.00.

72.

Upon information and belief, Defendant FCS financed properties in the Development at artificially inflated prices that it helped create, knowingly approving loans for amounts that were not justified by the true value of the properties and

knowingly failing to apply appropriate underwriting and property valuation standards.

73.

In reliance upon the Appraisal Report and the subsequent affirmation and ratification by Defendant FCS and the Southern Group Defendants, Plaintiff purchased Lot 8 from Defendants J. Dobson, McCormick and Gott for $135,000.00.

74.

The Defendants knew and understood that Plaintiff would rely upon the accuracy of the appraisal commissioned by Defendant FCS from Defendant Haisten as confirmation of the value of Lot 8.

75.

Defendant FCS knew or should have known that Lot 8 was grossly overvalued.

76.

No Defendant ever disclosed any information to Plaintiff concerning the true value of Lot 8.

77.

Upon information and belief, Nicolas Tcharos was paid by one or more of the Southern Group Defendants for each lot in the Development for which he recruited a purchaser and the purchaser actually closed on the property, including Lot 8.

## C.   **Closing of the Loan from Defendant FCS to Plaintiff**

78.

On or about May 27, 2008, Carri Smith, an employee of one or more of the Southern Group Defendants, who acted at the direction of Defendant J. Dobson, used the wires to transmit a HUD statement to Plaintiff for the closing of the loan from Defendant FCS to Plaintiff, which communication is attached hereto as Exhibit C.

79.

On or about May 30, 2008, Plaintiff went to the offices of the Southern Group Defendants, located in the Development, and signed various documents in the possession of Carri Smith.

80.

Said documents were prepared by Warranty Title Insurance Company, Inc. and one or more of the Southern Group Defendants.

81.

Upon information and belief, said documents were received from one or both of Defendant FCS and Warranty Title Insurance Company, Inc. through the mails and/or wires.

82.

Only Carri Smith was present when Plaintiff signed said documents.

83.

The closing documents for the loan from Defendant FCS to Plaintiff for the purchase of Lot 8 included, *inter alia*, a Promissory Note/Loan Agreement (the "Note"), a Basic Membership and Lending Relationship Agreement, and a Security Deed (hereafter, the "Security Deed"), all dated May 28, 2008.

84.

Lot 8 was not sold to Plaintiff until May 30, 2008.

85.

The principal amount payable under the Note is recited as $114,750.00.

86.

Plaintiff paid a down payment of $23,346.78.

87.

The Security Deed is signed by John Bradley Mount as a notary, which Security Deed is attached hereto as Exhibit D.

88.

At the time of Mount's actions described herein, Mount was acting within the scope of his employment by the Southern Group Defendants.

89.

Mount did not witness Plaintiff's signature to the Security Deed.

90.

With respect to the documents executed in connection with the FCS Loan, Plaintiff never met with or spoke to a bank official, an attorney or an employee of the title company, prior to execution of same.

91.

Plaintiff only ever spoke with Defendant J. Dobson and Carri Smith in connection with the FCS Loan, prior to and at the closing.

92.

Thus, no attorney or anyone else was ever present to advise or explain to Plaintiff the content of the documents she was directed to sign.

D.   **Defendants' Actions Subsequent to the Loan Closing**

93.

After the closing on Lot 8, Defendant Shields insisted that the partnership for the spa be between Plaintiff and Defendant Southern Group rather than Plaintiff and Defendant J. Dobson.

94.

In September of 2008, Rodney Bradley, an employee of the Southern Group Defendants, drafted an operating agreement for the formation of Southern Spas LLC, the members of which were to be Plaintiff and Defendant Southern Group.

95.

Thereafter, Defendant J. Dobson stopped returning Plaintiff's phone calls regarding the development of the spa.

96.

In November of 2008, Plaintiff was able to reach Defendant J. Dobson, who assured Plaintiff via telephone that the spa was going forward, and encouraged Plaintiff to go ahead and build a house on Lot 8.

97.

Thereafter, Defendant J. Dobson again stopped returning Plaintiff's telephone calls.

98.

In March of 2009, Keren Davies, an agent of the Southern Group Defendants who was acting at the direction of the Southern Group Defendants and whose actions were ratified by the Southern Group Defendants, advised Plaintiff via telephone that Defendant J. Dobson would not be honoring any promises that he had made about the spa.

99.

Defendant J. Dobson made promises to Plaintiff regarding the development of a spa to induce Plaintiff to purchase a lot in the Development, and once Plaintiff did so, Defendant J. Dobson stopped communicating with Plaintiff.

100.

Since Plaintiff's purchase of Lot 8, Plaintiff has determined that the Lot is valued at far less than the amount stated in the Appraisal Report.

101.

As a result of the purchase of Lot 8 and the Defendants' actions described herein, Plaintiff has suffered damages while Defendants have experienced financial gain.

102.

In addition to amounts expended for the purchase of Lot 8 and the payments made on the loan from Defendant FCS with respect to same, which payments are current, Plaintiff expended or incurred approximately $44,153.00 in expenses in her planning for the spa.

E.   **The Enterprise**

103.

Defendants actively participated in a fraudulent scheme to artificially create inflated prices for properties in the Development by, *inter alia*, knowingly and actively participating in activities which fostered demand for the properties, facilitating the manipulation of the sales prices of properties in the Development, including Lot 8, and funding property sales at inflated amounts. As a result, Defendants profited from the increased volume of sales in the Development and the fees

derived from, *inter alia*, appraisal reports, making loans and selling properties.

104.

In order to successfully and convincingly market properties at artificially inflated prices and get purchasers to pay and finance purchases at inflated prices, Defendants needed an organization and system that enabled them to effectively establish an aura of bona fide values and demand. Defendants constitute an association-in-fact enterprise that provides that organization and system.

105.

Each of the Defendants acted in concert as an enterprise for the common purpose of selling and financing properties at artificially inflated prices, which allowed them to function effectively and eliminated the checks and balances that would normally protect purchasers and allowed them to conceal the true and common objective of the Defendants.

F.   **Marketing by Defendants**

106.

Southern Real Estate, LLC is the name which the Southern Group Defendants use and have used to market properties in the Development, but upon information and belief, is not a registered limited liability company.

107.

Plaintiff believes that "Southern Real Estate, LLC" is an alias for either Defendant Southern Group or Defendant Southern Real Estate of Tennessee or is the trade name of a company operated by Defendants J. Dobson, T. Dobson and Shields.

108.

Upon information and belief, Defendants Southern Group, Southern Real Estate and J. Dobson used the mails and the wires to distribute certain "newsletters" which contained false statements used to convincingly market properties in the Development at artificially inflated prices. Plaintiff attaches hereto as Exhibit E three (3) of said newsletters, generated in 2008, which were received by Plaintiff.

109.

Newsletter Volume 1, Issue 3 states as follows:

An investment in the Southern Real Estate properties is a good one, both financially and personally. Because the company controls costs by managing development tasks, from land surveys to construction, everyone benefits. The savings are passed on to the buyers. In a down market, it's hard to figure out how real estate will fit into your portfolio, so amenities are being built within the next year and a half, creating value for property owners in our communities.

Thus, by their own admission, the Southern Group Defendants controlled everything from surveying to construction, all of which was and is a part of the enterprise identified herein.

23

110.

Newsletter Volume 1, Issue 3 also states:

As the value of raw land has declined dramatically
elsewhere in the U.S. market in recent years, holders
of Southern Real Estate, LLC's properties continue to
realize a healthy net gain from their investments.

Such a statement was false at the time made, and the
Defendants knew it.

### COUNT ONE:

### VIOLATION OF 18 U.S.C. § 1962(C) – FEDERAL RICO

### (as to all Defendants)

111.

Plaintiff incorporates paragraphs 1–110 as if fully
restated herein.

112.

Plaintiff and Defendants are "persons" within the meaning
of 18 U.S.C. § 1961(3).

113.

All of the Defendants are associated-in-fact and constitute
an enterprise which is engaged in, and the activities of which
affect, interstate commerce.

114.

The enterprise has operated in furtherance of a common
purpose beginning in or around 2006.

115.

Defendants each also have an existence separate and apart from the enterprise.

116.

Defendants are employed by or associated with an enterprise engaged in, and the activities of which affect, interstate commerce, and conspired to and have conducted and participated in the conduct of such enterprise's affairs through a pattern of racketeering activity.

117.

Defendants have committed at least two acts of racketeering activity, including commission of the following:

a.    Federal mail fraud in violation of 18 U.S.C. § 1341; and

b.    Federal wire fraud in violation of 18 U.S.C. § 1343.

118.

For the purpose of executing and attempting to execute the scheme described herein to defraud Plaintiff and obtain money by means of false or fraudulent pretenses, representations or promises, Defendants, in violation of 18 U.S.C. § 1341, caused things to be delivered by the Postal Service or private or commercial interstate carriers, intentionally and knowingly, with the specific intent to advance their scheme, or with knowledge that the use of the mails would follow in the ordinary

course of business, or that such use could have been foreseen, even if not actually intended.

119.

Defendants carried out their scheme across state lines and could not have done so without using the Postal Service or private or commercial interstate carriers.

120.

Defendants used wire, telephone, facsimile and electronic mail communications as part of their scheme to defraud Plaintiff, in violation of 18 U.S.C. § 1343.

121.

For the purpose of executing and attempting to execute the scheme described herein to defraud Plaintiff and obtain money by means of false or fraudulent pretenses, representations or promises, Defendants, in violation of 18 U.S.C. § 1343, transmitted, caused to be transmitted and/or received by means of wire communication in interstate commerce, various writings, signs and signals, intentionally and knowingly, with the specific intent to advance their scheme, or with knowledge that the use of wire communications would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

122.

Defendants knew or should have foreseen that the use of the mails and wires would be required to carry out their scheme.

123.

Each act of racketeering was related, had a similar purpose, involved the same or similar participants and means of commission, had similar results and impacted similar victims, including Plaintiff.

124.

The acts of racketeering which Defendants committed and conspired to and aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity.

125.

The purpose of the acts that caused injury to Plaintiff was to advance the overall objectives and purposes of the enterprise and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' scheme.

126.

Plaintiff has suffered damages proximately and directly caused by Defendants' actions.

127.

As a result of their fraudulent scheme, Defendants have obtained money belonging to Plaintiff.

128.

Defendants' actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

**COUNT TWO:**

**VIOLATION OF 18 U.S.C. § 1962(D) – FEDERAL RICO**

**(as to all Defendants)**

129.

Plaintiff incorporates paragraphs 1-110, 112 and 113 as if fully restated herein.

130.

In violation of 18 U.S.C. § 1962(d), Defendants have conspired to violate 18 U.S.C. § 1962(c), as set forth in Count One above. The conspiracy commenced at least as early as 2006. The object of the conspiracy was to sell real estate in the Development at inflated prices resulting in increased profits for Defendants.

131.

Each of the Defendants knowingly, willfully and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the enterprise referred to herein through a pattern of racketeering

activity, including acts indictable under 18 U.S.C. §§ 1341 and 1343 and in violation of 18 U.S.C. § 1962(c).

132.

Defendants committed numerous overt acts of racketeering activity and other wrongful activity in furtherance of the conspiracy.

133.

The purpose of the acts that caused injury to Plaintiff was to advance the overall objective of the conspiracy and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' scheme.

134.

As a direct and proximate result of Defendants' misrepresentations, manipulations, fraud and omissions as alleged herein, Plaintiff has been injured in her business and property by the Defendants' conspiracy and by the predicate acts which comprise Defendants' pattern of racketeering activity through the enterprise referred to herein.

135.

Defendants' actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

## COUNT THREE:

## VIOLATION OF O.C.G.A. § 16-14-4(B) - GEORGIA RICO

### (as to all Defendants)

136.

Plaintiff incorporates paragraphs 1-110, 114-115, 118 and 120-125 as if fully restated herein.

137.

Defendants are employed by or associated with the enterprise referenced herein and have conducted and/or participated in such enterprise through a pattern of racketeering activity.

138.

Defendants' racketeering activities include commission of the following:

- Residential mortgage fraud in violation of O.C.G.A. § 16-8-102;

- Theft by deception in violation of O.C.G.A. § 16-8-3;

- The following conduct defined as racketeering activity under 18 U.S.C. § 1961(1)(B):

  o Federal mail fraud in violation of 18 U.S.C. § 1341; and

  o Federal wire fraud in violation of 18 U.S.C. § 1343.

139.

Plaintiff has suffered damages proximately and directly caused by Defendants' actions.

140.

As a result of their fraudulent scheme, Defendants have obtained money belonging to Plaintiff.

141.

Defendants' actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

**COUNT FOUR:**

**VIOLATION OF O.C.G.A. § 16-14-4(C) – GEORGIA RICO**

**(as to all Defendants)**

142.

Plaintiff incorporates paragraphs 1-110 as if fully restated herein.

143.

In violation of O.C.G.A. § 16-14-4(c), Defendants have conspired to violate O.C.G.A. § 16-14-4(b), as set forth in Count Three above.

144.

Each of the Defendants knowingly, willfully and unlawfully agreed and combined to conduct or participate, directly or

indirectly, in the enterprise referred to herein through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1341 and 1343 and those acts referenced in paragraph 133 above and in violation of O.C.G.A. § 1962(b).

145.

Defendants committed numerous overt acts of racketeering activity and other wrongful activity in furtherance of the conspiracy.

146.

The purpose of the acts that caused injury to Plaintiff was to advance the overall objective of the conspiracy and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' scheme.

147.

As a direct and proximate result of Defendants' misrepresentations, manipulations, fraud and omissions as alleged herein, Plaintiff has been injured in her business and property by the Defendants' conspiracy and by the predicate acts which comprise Defendants' pattern of racketeering activity through the enterprise referred to herein.

148.

Defendants' actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to

raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

## COUNT FIVE:

### FRAUD

### (as to Defendant J. Dobson)

149.

Plaintiff incorporates paragraphs 1-5, 14, 15, 18, 30-58, 70-72, 74, 75, 77-81 and 83-110 as if fully restated herein.

150.

Defendant J. Dobson, with intent to deceive Plaintiff and to induce Plaintiff to act, made numerous representations to Plaintiff in 2008, as set forth herein, that he wished to open a spa with her in the Development and made numerous representations concerning what he would contribute to the development of said spa.

151.

Defendant J. Dobson, with intent to deceive Plaintiff and to induce Plaintiff to act, represented to Plaintiff in the spring of 2008, as set forth herein, that the value of all lots in the Development was $175,000.00 for each lot, including Lot 8.

152.

Defendant J. Dobson, with intent to deceive Plaintiff and to induce Plaintiff to act, represented to Plaintiff in or

around March of 2008 that certain amenities would be completed in the Development prior to the end of May, 2009, as set forth herein.

153.

Defendant J. Dobson made such representations to induce Plaintiff to purchase a lot in the Development.

154.

Defendant J. Dobson made such representations without a present intent to perform.

155.

Defendant J. Dobson intended for Plaintiff to rely upon his misrepresentations.

156.

The misrepresentations were known by Defendant J. Dobson to be and were false at the time made.  In truth, Defendant J. Dobson had no intention of ever entering into a business deal with Plaintiff and knew that the lots in the Development were grossly overvalued.

157.

Plaintiff believed and relied upon Defendant J. Dobson's misrepresentations, and thus was induced to purchase Lot 8.

158.

Plaintiff's reliance upon the misrepresentations was reasonable and justifiable.

159.

Plaintiff was injured and suffered damages proximately caused by Defendant J. Dobson's misrepresentations.

160.

As a result of the foregoing, Plaintiff has suffered monetary damages.

161.

Defendant J. Dobson's actions were undertaken in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

162.

Defendant J. Dobson's actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

**COUNT SIX:**

**FRAUD**

**(as to Defendant Haisten)**

163.

Plaintiff incorporates paragraphs 1-5, 24, 25, 63, 65-75, 77 and 101-105 as if fully restated herein.

164.

Defendant Haisten, with intent to deceive Plaintiff and to induce Plaintiff to act, represented to Plaintiff, as set forth herein, that the value of Lot 8 was $175,000.00 and concealed from Plaintiff the true value of Lot 8.

165.

Defendant Haisten intended for Plaintiff to rely upon such misrepresentation and concealment.

166.

The representation was known by Defendant to be and was false at the time made.  In truth, the value of Lot 8 was much lower.

167.

Plaintiff believed and relied upon the misrepresentation, and thus was induced to purchase Lot 8.

168.

Plaintiff's reliance upon the false representation was reasonable and justifiable.

169.

Plaintiff was injured and suffered damages proximately caused by Defendant Haisten's misrepresentation and concealment.

170.

As a result of the foregoing, Plaintiff has suffered monetary damages.

171.

Defendant Haisten's actions were undertaken in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

172.

Defendant Haisten's actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

**COUNT SEVEN:**

**NEGLIGENCE**

**(as to Defendant Haisten)**

173.

Plaintiff incorporates paragraphs 1-5, 24, 25, 63, 65-75, 77 and 101-105 as if fully restated herein.

174.

Defendant Haisten owed the general public, and specifically Plaintiff, a duty to exercise a reasonable degree of care and competence in rendering their business services.

175.

Defendant Haisten breached its duty by failing to ensure that the appraised value in the Appraisal Report was representative of the true value of Lot 8.

176.

Plaintiff suffered damages proximately caused by Defendant Haisten's breach of duty.

177.

Defendant's actions were undertaken in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

178.

Defendant's actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

## COUNT EIGHT:

## VIOLATION OF THE INTERSTATE LAND SALES FULL DISCLOSURE ACT,

## 15 U.S.C.A. § 1703

## (as to Defendants Southern Group, J. Dobson, McCormick and Gott)

179.

Plaintiff incorporates Paragraphs 1-110, 117-122, 125, 127, 138, 140 and 150-160 as if fully restated herein.

180.

Defendants Southern Group, J. Dobson, McCormick and Gott are the owners and developers of the Development. The Development and said Defendants are subject to the Federal

Interstate Land Sales Full Disclosure Act, 15 U.S.C.A. § 1701, et seq.

181.

On or about March 28, 2008, Defendants J. Dobson, McCormick and Gott entered into an agreement to sell Lot 8 of the Development to Plaintiff.

182.

On or about May 30, 2008, Defendants J. Dobson, McCormick and Gott sold to Plaintiff Lot 8 of the Development.

183.

Defendants Southern Group, J. Dobson, McCormick and Gott failed to comply with the terms of the Federal Interstate Land Sales Full Disclosure Act and the applicable federal regulations at 24 C.F.R. Part 1710 and all extensions and amendments thereto, in connection with the sale of Lot 8 to Plaintiff.

184.

The failure to comply with the Federal Interstate Land Sales Full Disclosure Act and the applicable federal regulations includes the following omissions by Defendants Southern Group, J. Dobson, McCormick and Gott:  (a) said Defendants have not registered the Development with the Secretary of Housing and Urban Development; and (b) said Defendants did not exhibit a property report of the purchaser at the time the agreement to purchase was signed.

185.

Further, as provided herein, said Defendants employed a scheme to defraud Plaintiff, obtained money from Plaintiff by means of untrue statements of a material fact and omissions to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale) not misleading, with respect to information pertinent to Lot 8 and the Development, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon Plaintiff.

186.

Plaintiff paid the sum of $135,000.00 to Defendants J. Dobson, McCormick and Gott, for which Defendants J. Dobson, McCormick and Gott delivered to Plaintiff a warranty deed conveying Lot 8 to Plaintiff. A copy of the warranty deed is attached hereto as Exhibit F and incorporated herein by reference.

187.

By reason of Defendants Southern Group, J. Dobson, McCormick and Gott's failure to comply with the Federal Interstate Land Sales Full Disclosure Act, Plaintiff is entitled to damages from Defendants Southern Group, J. Dobson, McCormick and Gott in an amount equal to the difference between the amount

of the purchase price paid, in the sum of $135,000.00, and the actual lesser value of the following:

    a.   the value of Lot 8 at the time this action was brought;

    b.   the price Lot 8 could have been disposed of in a bona fide transaction before this action was brought; and

    c.   the amount for which Lot 8 shall be disposed of in a bona fide transaction before judgment is taken in this action.

188.

Defendants' actions were undertaken in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

189.

Defendants' actions showed such willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care as to raise the presumption of conscious indifference to consequences and a specific intent to cause harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1) That a Summons be issued and process served upon each Defendant;

2) That all factual issues be resolved in a trial by jury;

3) That judgment be entered in favor of Plaintiff for actual damages sustained as a result of the actions described in Counts One through Eight of this Complaint;

4) That judgment be entered in favor of Plaintiff for treble damages as a result of the actions described in Counts One through Four of this Complaint;

5) That judgment be entered against Defendants Southern Group, J. Dobson, McCormick and Gott in an amount equal to $135,000.00, less the amount equal to the actual value of Lot 8 as determined by the lesser of the following:

    a.    The value of Lot 8 at the time this action was brought;

    b.    The price Lot 8 could have been disposed of in a bona fide transaction before this action was brought; and

    c.    The amount Lot 8 may be disposed of in a bona fide transaction before judgment in this action.

6) That judgment be entered in favor of Plaintiff for all attorneys' fees, costs, and other expenses of litigation incurred as a result of the actions described in Counts One through Eight of this Complaint;

7) That Plaintiff be awarded special damages including attorney's fees and costs pursuant to O.C.G.A. § 13-6-11, in an amount to be determined at trial;

8) That judgment be entered in favor of Plaintiff for punitive damages as a result of the actions described in Counts One through Eight of this Complaint;

9) That judgment be entered in favor of Plaintiff for pre-judgment interest;

10) That costs of this action be imposed upon Defendants; and

11) Such other relief as this Court deems just and proper.

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 5.1 (C), I certify this pleading was prepared per L.R. 5.1(B) in Courier New, 12 point typeface.

Respectfully submitted, this the 28th day of September, 2010.

Richard C. Wayne, Sr.
Georgia Bar No. 742725
Counsel for Plaintiff

Richard C. Wayne & Associates, P.C.
Attorneys & Counselors at Law
Peachtree | 25th Building
1720 Peachtree Street NW, Suite 118
Atlanta, Georgia 30309
Telephone: (404) 231-1444
Facsimile: (404) 231-1666
Email: richard@rwaynelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I will personally serve the foregoing COMPLAINT to the following non-CM/ECF participants by personal service:

43

Southern Group, LLC

Southern Real Estate of Tennessee, LLC

Travis Shields
(individually, and d/b/a Southern Real Estate, Southern
Real Estate, LLC and Mortgage Payment Services, LLC)

Joshua Dobson
(individually, and d/b/a Southern Real Estate, Southern
Real Estate, LLC and Mortgage Payment Services, LLC)

Thomas Dobson
(individually, and d/b/a Southern Real Estate, Southern
Real Estate, LLC and Mortgage Payment Services, LLC)

Joel McCormick

Paul Edward Gott, III

The Haisten Group, Inc.

Farm Credit Services of Mid-America, FLCA

This 28th day of September, 2010.

Richard C. Wayne, Sr.
Georgia Bar No. 742725
Counsel for Plaintiff

Richard C. Wayne & Associates, P.C.
Attorneys & Counselors at Law
Peachtree | 25th Building
1720 Peachtree Street NW, Suite 118
Atlanta, Georgia 30309
Telephone: (404) 231-1444
Facsimile: (404) 231-1666
Email: richard@rwaynelaw.com